Filed 1/6/15  Terra 96 v. Gorby CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| TERRA 96,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>JOANNE R. GORBY et al.,<br><br>Defendants and Respondents. | B252481<br><br>(Los Angeles County<br>Super. Ct. No. LC097974) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Maria E. Stratton, Judge.  Reversed with directions.

Law Offices of Wayne M. Abb, Wayne M. Abb for Plaintiff and Appellant.

No appearance for Defendants and Respondents

.       Plaintiff Terra 96 ("Lessor") appeals the judgment entered following the successful demurrer, without leave to amend, of defendants Joanne R. Gorby ("Gorby"), individually and dba DSS/Family Harmony; Arnold Abrams, individually and dba DSS/Family Harmony; Driver Safety Schools, Inc.; Driver Safety Schools, Inc. dba DSS/Family Harmony; and DSS Family Harmony (all of the foregoing are collectively referred to as "defendants") to Lessor's complaint for breach of a commercial lease. Lessor maintains that the trial court erred in concluding that the lessees' breach of the lease absolved them from liability flowing from their exercise of an option to extend the lease term. We agree, and so reverse the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On April 27, 2006, Lessor leased to "DSS/Family Harmony – Joanne R. Gorby" ("Lessee") the improved commercial real property located at 6850 Van Nuys Boulevard, Suite 100, Van Nuys, California 91405 ("the Lease"). Concurrently therewith, Gorby executed a "Guaranty of Lease." The initial term of the Lease was for a period of five years from June 15, 2006 to and including June 14, 2011. The Lease also contained an attachment entitled "Option(s) to Extend." The option to extend was for two additional 60-month periods, commencing when the prior terms expired. In order to exercise an option, the Lessee was required to "give written notice of such election to Lessor and Lessor must receive the same at least 6 but not more than 9 months prior to the date that option period would commence, time being of the essence."

Paragraph 39.4(c) of the Lease provides: "An Option shall terminate and be of no further force or effect, notwithstanding the Lessee's due and timely exercise of the Option, if after such exercise and prior to the commencement of the extended term . . . (i) Lessee fails to pay Rent for a period of 30 days after such Rent becomes due (without any necessity of Lessor to give notice thereof), or (ii) if Lessee commits a Breach of this Lease."

Paragraph 13.1(a) provides that the abandonment of the property shall constitute a breach of the Lease.

2

On November 5, 2010, on the letterhead of "Driver Safety Schools, Inc.," Gorby as "President and CEO," and Arnold Abrams as "Program Supervisor," exercised the first option to extend on behalf of Lessee. A second letter on Driver Safety Schools, Inc. letterhead was sent on December 15, 2010, reiterating that the option was being exercised. It was signed by Arnold Abrams as "Program Supervisor." Then on January 15, 2011, once again on Driver Safety Schools, Inc. stationery and also signed by Arnold Abrams as "Program Supervisor," the option was again exercised. Lessor acknowledged receipt of the latter two letters.

Lessor alleges, and Lessee does not dispute, that after exercising the option, Lessee abandoned the premises at the end of the original lease term.

On August 1, 2012, Lessor filed a "Complaint for Breach of Lease" against defendants. Lessor alleged that at the time Lessee vacated the premises, $8,413.56 in rent was in arrears. Lessor sought to recover an additional sum of "at least $268,000" in rent due through the end of the option term.

Gorby and Driver Safety Schools, Inc. demurred to the complaint, claiming that the complaint "sets forth facts which disclose an absolute defense to Plaintiff's Complaint which Plaintiff is precluded from contradicting," to wit: "Plaintiff's Complaint specifically alleges that Defendants were in breach of the Lease prior to the 'commencement of the extended term' since $8,413.56 in rent was due and owing prior to June 15, 2011, the commencement of the new Lease. . . . [¶] The Written Lease specifically provides that the Lease shall have 'no force or effect' notwithstanding Lessee's due and timely exercise of the Option if Defendants are in breach of the Lease. The paramount rule of contract interpretation is to give effect to the parties' mutual intent as it existed at the time the lease was executed. (Civ. Code, § 1636; *Santisas v. Goodin* (1998) 17 Cal.4th 599, 608.) [¶] By force of the terms of the Option to Extend (provision 51(ii)) and the Lease (provision 39.4(c)) itself, when Defendants were in breach of the Lease by not having paid two months' rent for the sum of $8,413.56 as back rent prior to the commencement of the extended term, the extended Lease became 'void and of no effect.' . . . [¶] By the very terms of the Lease and Plaintiff's admissions in its

3

Complaint, no cause of action for breach of lease and/or rent for the option period exists since there was no extension of the Lease. Lessor may not be heard to complain at this date that provision 39 is unfair. Parties have [the] right to make agreements which are improvident or unwise or operate unjustly. [Citation.] The lease terminated by its very terms and was of no effect."[1] The trial court sustained the demurrer with leave to amend.

On January 8, 2013, plaintiff filed a "First Amended Complaint For Breach of Contract and Breach of Guarantee." The breach of contract cause of action was brought against all defendants and the breach of guaranty was brought against Gorby. The amended complaint deleted the allegation of the original complaint that $8,413.56 in past rent was due and owing.

On February 2, 2013, defendants (other than Arnold Abrams), demurred to the amended complaint. In addition to reiterating the arguments of their earlier demurrer, defendants maintained that the amended complaint was a "sham pleading," based on the deletion of the allegation that Lessor was owed rent accrued during the original lease term. The trial court sustained the demurrer and once again granted leave to amend.

On April 12, 2013, plaintiff filed a second amended complaint, the operative complaint in this appeal, "for breach of contract against the defendants and breach of guarantee against Gorby." Again, defendants demurred, contending that Lessor had not remedied the defects of the earlier complaints.

After a hearing on August 6, 2013, the trial court took the matter under submission. In its written ruling filed on August 8, 2013, the court agreed with the defendants that, pursuant to the clear and unambiguous terms of the Lease, the option was extinguished upon Lessee's abandonment of the leasehold, resulting in no further

---

[1] Defendants challenged the sufficiency of the complaint on additional grounds, including the argument that the option to extend the lease was not exercised by "DSS/Family Harmony – Joanne R. Gorby," and thus was not effective, since the Lease provided that the option "is personal to the original Lessee, and cannot be assigned or executed by anyone other than said original Lessee . . . ."

4

obligations on the part of Lessee under the Lease.  Accordingly, the court sustained the demurrer without leave to amend.

On September 13, 2013, notice of entry of judgment was entered by the court. Lessor timely filed its notice of appeal on November 12, 2013.

DISCUSSION

"On appeal from a judgment dismissing an action after the sustaining of a demurrer without leave to amend, [the] standard of review is de novo. . . .  [The court] treat[s] the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. . . ."  (*Moe v. Anderson* (2012) 207 Cal.App.4th 826, 830-831.)[2]

Paragraph 39.4 of the Lease, entitled "Effect of Default on Options," states in subparagraph (c) thereof:  "An Option shall terminate and be of no further force or effect, notwithstanding Lessee's due and timely exercise of the Option, if after such exercise and prior to the commencement of the extended term . . . Lessee commits a breach of this Lease."  The extended term was to commence on June 15, 2011.

Paragraph 13.1 of the lease provides that the abandonment of the leased premises constitutes a breach of the lease.  In the operative complaint, Lessor alleged: "Defendants notwithstanding the exercise of the option, abandoned the premises on or about June 14, 2011."

Normally, if contractual language is clear and explicit, it governs.  (*Foster-Gardner* (1998) 18 Cal.4th 857, 868; *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264; Civ. Code, § 1636.)  The language at issue in the present case is abundantly

---

[2]     Because an order sustaining a demurrer without leave to amend is determined strictly as a matter of law and is subject to de novo review (*Moe v. Anderson, supra,* 207 Cal.App.4th at pp. 830-831; *California National Bank v. Woodbridge Plaza, LLC* (2008) 164 Cal.App.4th 137, 142), we deem the record in the present case sufficient for purposes of review.  (See *Chodos v. Cole* (2012) 210 Cal.App.4th 692, 699-700.)  We note that Lessor does not contend on appeal that the trial court erred in not granting further leave to amend, so there is no issue of abuse of discretion before us.

clear, that if the Lessee exercised its option to extend the Lease and then breached the Lease *prior* to the commencement of the extended term, the option was deemed terminated and of no further force or effect. Lessor contends, however, that even if the language of an instrument is clear and explicit, if it leads to an absurd or unreasonable result then the language of the contract is not controlling. (See 1 Witkin, Summary of Cal. Law (9th ed. 1988) Contracts, § 681, p. 943; *Bank of the West v. Superior Court, supra,* 2 Cal.4th at p. 1264; *AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 822; *San Mateo Community College District v. Half Moon Bay Ltd. Partnership* (1998) 65 Cal.App.4th 401, 409; *Blackhawk Corp. v. Gotham Ins.* (1997) 54 Cal.App.4th 1090, 1095.)

The Lease contained two options to extend the lease term for two consecutive five year terms. Lessees were required to give Lessor notice of its intent to exercise an option at least six but not more than nine months prior to the date that the option period would commence. Paragraph 39.4 provides that Lessee may not exercise an option at any time that it is in default under the terms of the Lease. The obvious purpose of the six-month notice provision was to allow Lessor to have time to acquire a new tenant in the event Lessee did not wish to extend the term of the Lease.

Lessor contends that the language set forth in Paragraph 39.4(c), quoted above, was included to protect the lessor, not the lessee. It was included in the form lease to allow the lessor to void a defaulting lessees' right to extend the term of the lease if, after the exercise of the option and prior to the commencement of the renewal term of the lease, the lessee were to default in the performance of its obligations under the lease. Lessor argues that Paragraph 39.4(e) was not included to allow a lessee to avoid its obligations to a lessor under a lease option by intentionally defaulting. This would, it argues, lead to an absurd result. Lessor, who was not seeking a new tenant due to lessee's exercise of its option, could suddenly find it had an empty building with no rent coming in, because the lessee defaulted under the lease shortly before the commencement of the extended term. We agree.

6

An agreement that is susceptible to more than one interpretation is interpreted to make it lawful, operative, definite, reasonable, and capable of being performed in order to uphold the validity of the contract, without violating the intention of the parties. (Civ. Code, §§ 1643, 1652, 3541, 3542; *Bleecher v. Conte* (1981) 29 Cal.3d 345, 350.) Words in a contract that are wholly inconsistent with the main intention of the parties are rejected. (Civ. Code, § 1653.) In so doing, a lease must be read as a whole. Construction cannot lead to an unreasonable or absurd result. Contracts must be construed as a whole and the intention of the parties is to be determined from the entire instrument and not detached portions thereof, it being necessary to consider all of the parts to determine the meaning of any particular part as well as of the whole. (*Hunt v. United Bank & Trust Company of California* (1930) 210 Cal. 108, 115.)

The intention of the parties in entering into a long-term lease with two options to extend the lease term is to provide a certain level of security and predictability for both parties. The parties can manage their business affairs, their costs of doing business, knowing what their rent will be for a specified time. The lessee is free to leave at the end of a fixed term, or it can exercise an option to extend the lease term, if one was agreed to by the parties when the lease was signed, or thereafter. It is the lessor who grants the option; the lessor may, if it chooses, waive any pre- or post-exercise default or breach. The entire thrust of Paragraph 39.4 is to give the lessor the option to accept or reject the exercise of an option even if the lessee is in default under any terms or provisions of the lease. Lessees do not have the right to waive their own breach; lessor alone has that right.

Any other interpretation of Paragraph 39.4(c) would allow a lessee to exercise an option and lull the lessor into thinking that it has a tenant with a five-year continuous rent stream, and then change its mind, default under a term of the lease to terminate the option and leave the premises at the end of the lease term without consequence. That is an absurd result.

A forfeiture clause in a lease is not self-executing. The provision that, on default by the lessee, the option "shall terminate and be of no further force or effect" does not

7

empower the tenant to end the lease at will by failing to perform. (12 Witkin, Summary of Cal. Law (10th ed. 2005) Real Property, p. 785, citing *Bank of America v. Moore* (1937) 18 Cal.App.2d 522, 526.)

In *Bank of America v. Moore, supra*, 18 Cal.App.2d 522 in setting forth what it found to be the defendant's "most earnestly" defended position, the appellate court stated: "The other, and more earnestly defended position, is that by the terms of the lease itself, defendant's failure to pay rent releases him from the necessity of doing so. This somewhat unexpected term of a lease contract is found, if we could accept defendant's construction, in this provision of the lease: 'And it is Further Covenanted and Agreed that in case the said Lessee fails, neglects, or refuses to pay said rent of said premises at any time during the continuance of the lease, for a period of ten days after any payment becomes due according to the terms hereof, or any part thereof, then and in that case this lease shall thereupon become null and void, and all rights of said Lessee hereunder shall be forfeited and ended as hereinafter provided.' . . . [¶] We are of the opinion that an option is not given the lessee to drop the burdens of his ninety-nine year lease whenever he desires to give up its advantage, as would be the case if we interpreted the language quoted as providing for an automatic termination of the lease if the rent was not paid for ten days. This is not the first instrument employing such terms to be the subject of judicial construction and, so far as we are aware, the conclusion has invariably been reached that the option [to terminate the lease] rested with lessor. Whether the failure to pay the rent did or did not void the lease, the provision was inserted for the benefit of the lessor, it does not constitute an option for the benefit of the lessee." (*Id*., at p. 526; see also *Central Oil Co. v. Southern Refining Co.* (1906) 154 Cal. 165; *Harron, Rickard & McCone v. Cutting* (1912) 19 Cal.App. 780.)

In sum, the provision in a lease whereby the lease shall be deemed null and void on the failure of the lessee to pay rent or perform other covenants of a lease is not self-executing so as to make the lease void ipso facto by the default of lessee but, being a provision for the benefit of the lessor, may be enforced or waived at the lessor's option. (*Bank of America v. Moore, supra,* 18 Cal.App.2d 522.) The provision does not mean

8

that the defaulting party can bring the contract to an end by refusing to perform a provision thereof. The forfeiture of the lease takes place only upon the election of the injured party. (1 Witkin, Summary of Cal. Law, *supra*, Contracts, p. 943, citing *Bank of America v. Moore, supra,* 18 Cal.App.2d at p. 526*; Felton Chemical Co. v. Superior Court* (1939) 33 Cal.App.2d 622, 626; *Norins Realty Co. v. Hoytt* (1943) 61 Cal.App.2d 194, 199.)

Here, by exercising its option to extend the Lease, Lessee agreed to a five-year extension of the lease term during which time it would get the benefit of the use of the leased premises and would be responsible for the payment of rent and for otherwise complying with all of the covenants of the Lease. Lessee cannot thereafter cause a default in its obligations under the Lease and then rely on paragraph 39.4(c) to exculpate itself from its obligations under the Lease.

DISPOSITION

For the reasons set forth above the judgment of the trial court is reversed, as is the order of the trial court sustaining the demurrer to the second amended complaint without leave to amend. Defendants' answers to the complaint shall be due 30 days after the date of the issuance of the remittitur. Lessor is awarded its costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

MINK, J.[*]

We concur:

TURNER, P.J.                    MOSK, J.

---

[*] Retired judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.